# In re Anonymous No. 72 D.B. 86

Disciplinary Board Docket no. 72 D.B. 86.

RUDNITSKY, *Member,* February 8, 1996—Pursuant to Rule 218(c)(5) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania submits its findings and recommendations to your honorable court with respect to the above-captioned petition for reinstatement.

## I. HISTORY OF PROCEEDINGS

On July 22, 1994, petitioner, [    ], filed a petition for reinstatement. Petitioner was disbarred on consent by order of the Supreme Court of Pennsylvania dated November 22, 1986. The petition was referred to Hearing Committee [    ] comprised of Chairperson [    ], Esquire, and Members [    ], Esquire and [    ], Esquire. The reinstatement hearing was held on April 12, 1995. The petitioner was represented by [    ], Esquire. Office of Disciplinary Counsel was represented by [    ], Esquire.

On September 8, 1995 the committee filed its report and recommended that the petition for reinstatement be granted. No briefs on exceptions were filed by the parties. This matter was adjudicated by the Disciplinary Board at the meeting of October 6, 1995.

## II. FINDINGS OF FACT

(1) Petitioner, [    ], was born on October 15, 1942. He was admitted to practice law in Pennsylvania in November 1967. He is divorced with three children. He and his former wife have a supportive, friendly relationship.

(2) On January 23, 1986, petitioner was arrested and pleaded guilty to using a communication device in furtherance of a felony in violation of 21 U.S.C. §843(b).

(3) Petitioner was disbarred on consent by order of the Supreme Court on November 22, 1986.

(4) Petitioner was sentenced to three years incarceration, four years probation and a $75,000 fine.

(5) Petitioner served his sentence at [    ] in [    ]. While incarcerated, petitioner taught a course for inmates on small businesses, tutored illiterate inmates, led weekly religious services for Jewish inmates, became an inmate advisor, and worked at various prison jobs, including writing computer programs that saved the [    ] money. (N.T. 63-66, 71-72, 75-76.)

(6) Petitioner paid the fine, which had been reduced to $50,000 following his release from prison. Petitioner utilized all the money he could spare, including his pension fund, to pay his debt. (N.T. 79-80.)

(7) Petitioner is currently employed as chief development officer for [A] Company. Petitioner has worked in a non-lawyer capacity for this company since his release from prison. (N.T. 33.)

(8) Petitioner has been very careful not to engage in the practice of law since his disbarment. All employees and persons dealing with [A] are informed that petitioner is not a lawyer. (N.T. 34, 37, 93.)

(9) If petitioner is reinstated, it is [A's] intent to utilize petitioner's legal skills. (N.T. 43.)

(10) Petitioner reviews the *National Law Journal* and the *ABA Journal on Banking and Corporate Law.* (Petition for reinstatement.)

(11) Petitioner completed the required PBI courses. (Exhibit P-1.)

(12) Three witnesses testified on petitioner's behalf at the hearing. These witnesses all stated that petitioner's reinstatement would not have a detrimental effect on the integrity of the bar. The witnesses testified to petitioner's good reputation, and his integrity and decency. The witnesses believe that petitioner is a very competent lawyer and his crime was an aberration. (N.T. 13-15, 21-30, 30-44.)

(13) Petitioner submitted into evidence 44 letters of character reference, all of which support petitioner's petition for reinstatement. (Exhibit P-2.)

(14) Petitioner expressed extreme remorse for his conduct and stated that the worst aspect of his crime was coping with his loss of self-respect and the damage to his relationship with his children. (N.T. 62-63, 78-79.)

(15) Petitioner admitted his crime was one of mindless greed and was inexcusable. (Petition for reinstatement.)

(16) Petitioner decided even before he went to prison that he had to make amends to the community. He worked as a full-time volunteer at [B], an organization devoted to fulfilling the dreams of terminally ill children. (Petition for reinstatement.)

(17) While in prison, petitioner remained active in helping others and in this manner he was able to continue with his own rehabilitation.

(18) Since his release from prison, petitioner has worked hard to repair his relationship with his children

and regain the respect of the community. Petitioner admitted that this was very difficult for him to achieve, as many people did not acknowledge him immediately. Petitioner is active in his synagogue and donates time and money to local groups providing food to homeless people. (Petition for reinstatement.)

(19) At the present time, petitioner has not practiced law for nine years.

(20) Office of Disciplinary Counsel does not oppose the granting of the petition for reinstatement.

## III. CONCLUSIONS OF LAW

The misconduct for which petitioner was disbarred is not so egregious as to preclude immediate reconsideration of his petition for reinstatement.

Petitioner has satisfied his burden by demonstrating through clear and convincing evidence that he possesses the moral qualifications, competency and learning in the law necessary to practice law in the Commonwealth of Pennsylvania.

Petitioner's resumption of the practice of law will not be detrimental to the integrity of the bar nor will it be subversive to the interests of the public.

## IV. DISCUSSION

Petitioner seeks reinstatement from a disbarment. This disbarment occurred as a result of petitioner's criminal conviction for using a communication device in furtherance of a felony. The criminal conduct arose when petitioner became involved in a scheme with a client wherein petitioner contacted a third person to give money to the client to buy a type of oil that is a precursor to the manufacture of methamphetamine. Petitioner received money for his part in the transaction.

In order to be reinstated from a disbarment, petitioner must initially meet the threshold burden set forth by the Supreme Court in *Office of Disciplinary Counsel v. Keller,* 509 Pa. 573, 506 A.2d 872 (1986). The issue in *Keller* pertained to whether that respondent should be disbarred or suspended for certain Disciplinary Rule violations. In disposing of this issue, the court discussed the difference between suspension and disbarment. The court explained that there is a distinct, qualitative difference between suspension and disbarment in the nature of entitlement. In the case of suspension, the withdrawal of the privilege to practice is for a specific time. After expiration of that period of suspension, an attorney can resume the practice of law upon a demonstration of fitness pursuant to Pa.R.D.E. 218(b)(3)(i). In contrast, when disbarment has been imposed, the length of the withdrawal from practice has not been previously determined. There is no basis for an expectation of the privilege to resume practice at some future point in time. The only guideline as to the withdrawal of the license is that it must be for a minimum of five years. In order to emphasize the important distinctions between the two sanctions, the Supreme Court devised a threshold inquiry that must be met by a petitioner in reinstatement from disbarment cases before any analysis of the requisites of Rule 218 may be undertaken.

The threshold inquiry as articulated in *Keller* is whether the magnitude of the breach of trust would permit the resumption of practice without a detrimental effect upon the integrity and standing of the bar or the administration of justice nor be subversive of the public interest.

The board must determine whether the original misconduct was so patently offensive as to preclude readmission. Such an inquiry demands an analysis of

whether a sufficient length of time has evolved since the acts of misconduct occurred and whether petitioner engaged in qualitative rehabilitation during that time. *Keller, supra.* If petitioner's misconduct does not prevent consideration of his current request for reinstatement, the board must then consider whether petitioner possesses the moral qualifications, competency and learning in the law necessary to merit readmission to the bar, pursuant to Rule 218(c)(3)(i), Pa.R.D.E.

In order to determine whether the misconduct that led to disbarment is so egregious as to preclude reinstatement, the board must review the underlying offenses. It is possible that certain conduct by an attorney may be so reprehensible that the threshold question will never be answered in the affirmative; however, review of case law indicates that while petitioner's conduct was less than reputable, it was not so egregious a breach of trust or repugnant to the integrity of the bar or interests of the public as to obviate his possible reinstatement. Petitioner was convicted of using a telephone in furtherance of a felony. That felony involved providing oil for the manufacture of methamphetamine. Petitioner's involvement in this scheme was motivated by monetary interest. While certainly deplorable, petitioner's conduct is no worse than that found in similar conviction cases wherein disbarred attorneys were reinstated. In the case of *In re Anonymous No. 45 D.B. 84,* 15 D.&C.4th 321 (1992), an attorney who was disbarred as a result of a federal drug conviction was reinstated as the misconduct was not so egregious as to preclude consideration of the petition. In another drug conviction case, the attorney was reinstated after disbarment for conviction of possession and delivery of a controlled substance. *In re Anonymous No. 30 D.B. 79,* 1 D.&C.4th 14 (1987). In the case of *In re*

*Anonymous No. 32 D.B. 83,* 14 D.&C.4th 136 (1991), an attorney who was disbarred for conviction for theft by failure to make required disposition of funds was reinstated. An attorney who was disbarred for conviction for federal mail fraud charges was reinstated. *In re Anonymous No. 99 D.B. 84,* 14 D.&C.4th 342 (1991). An attorney who was disbarred for delivering a bribe to a public official, giving false testimony under oath, failing to make appropriate disclosure to a federal grand jury and laundering checks was reinstated after undergoing a qualitative rehabilitation during a seven year disbarment period. *In re Anonymous No. 26 D.B. 81,* 7 D.&C.4th 260 (1990).

Having made the determination that petitioner's misconduct was not so egregious as to permanently avert his reinstatement to the bar, the next query is whether a quantitative period of time has elapsed during which petitioner has actively engaged in qualitative rehabilitation. It has been nine years since petitioner was disbarred on consent. During that time period, the conduct and rehabilitative efforts of petitioner have been laudable. While in prison petitioner engaged in activities to help other inmates. It appears from the record that petitioner was a model prisoner who engaged in many meaningful activities while incarcerated. Petitioner also worked while in prison and wrote computer programs that saved money for the [    ]. Petitioner has been active in synagogue and charitable functions. Petitioner has worked extremely hard to reunite himself with his three children and to rebuild those important relationships. Petitioner has worked hard at gaining the respect of the community once again, even though the obstacles he faced relative to this endeavor were difficult. During his nine years of disbarment, petitioner was always frank about his criminal misconduct and did not avoid

engaging in activities because of this stigma. Most importantly, petitioner has expressed his sincere regret and remorse for his misconduct. *Matter of Costigan,* 541 Pa. 459, 664 A.2d 518 (1995). Based on this evidence the board concludes that the nine year period of disbarment has been meaningful, and the petitioner's present reinstatement would not pose a threat to the integrity of the bar or the interests of the public.

As the board determines that petitioner has surpassed the threshold inquiry of *Keller,* the focus of this opinion turns to the requisites of Rule 218. The board must determine whether petitioner possesses the moral character necessary to resume practice. Petitioner presented character testimony from two [  ] attorneys and his employer. These witnesses gave strong testimony that petitioner is a worthy, decent individual whose prior criminal activity was an aberration. These witnesses had no hesitation in welcoming petitioner back into the bar. In addition to these witnesses, approximately 44 character letters were sent on behalf of petitioner. These letters uniformly praised petitioner's good character and competence as an attorney. None of these references had any doubts concerning petitioner's reinstatement. Based on the record before the board, petitioner clearly possesses the appropriate moral attributes required to be a member of the bar.

It is also petitioner's burden to show that he possesses competency and learning in the law. Petitioner presented evidence that he reviews the *National Law Journal* and *ABA Journal on Banking and Corporate Law.* Petitioner fulfilled his PBI requirements. This evidence demonstrates that petitioner has maintained the requisite learning in the law. As to his competency, petitioner accurately and completely answered the questions on his reinstatement questionnaire. Petitioner has paid all

fines in connection with his criminal conduct. Petitioner has not been involved in any criminal activity since his disbarment. Petitioner holds a position of responsibility at [A], and his employer testified to his competence and capability in that position. Other witnesses testified or wrote letters as to petitioner's competence in the law and in general. Based on this evidence, the board finds that petitioner has proven his competence by clear and convincing evidence.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania unanimously recommends that petitioner, [     ], be reinstated to the practice of law.

The board further recommends that, pursuant to Rule 218(e), Pa.R.D.E., petitioner be directed to pay the necessary expenses incurred in the investigation and processing of the petition for reinstatement.

Messrs. Saltz and Miller recused themselves.

Messrs. Paris and George did not participate in the October 6, 1995 adjudication.

## ORDER

And now, March 1, 1996, upon consideration of the report and recommendations of the Disciplinary Board of the Supreme Court of Pennsylvania dated February 8, 1996, the petition for reinstatement is granted.

Pursuant to Rule 218(e), Pa.R.D.E., petitioner is directed to pay the expenses incurred by the board in the investigation and processing of the petition for reinstatement.